UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TINA L. ANDERSON, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | 1:12-cv-625-JMS-DML |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Tina L. Anderson ("Ms. Anderson") applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") in March 2008, alleging that her disability began on November 1, 2007. [Dkt. 13-5 at 2-6.] Her application was denied both initially and on reconsideration by the Defendant, Commissioner of the Social Security Administration (the "Commissioner"). [Dkt. 13-3.] Ms. Anderson had a hearing before Administrative Law Judge ("ALJ") Tammy H. Whitaker on May 3, 2010. [*See* dkt. 13-2 at 39-75.] On September 15, 2010, the ALJ issued a decision finding that Ms. Anderson was not disabled. [*Id*. at 16-30.] Ms. Anderson has filed this action under 42 U.S.C. § 405(g), asking the Court to review her denial of benefits. [Dkt. 1.]

## I.
### RELEVANT BACKGROUND

At the time of Ms. Anderson's hearing before the ALJ, she was forty-three years old and not gainfully employed. [Dkt. 13-2 at 44-45.] Ms. Anderson has an eleventh-grade education and has not obtained a GED. [*Id.* at 44.] Ms. Anderson testified that she worked as a cashier at Payless Liquors after the alleged disability onset date, but that she served as seasonal help and

ceased working once the season ended.  [*Id.* at 47.]  Ms. Anderson also worked at the Westin after her alleged disability onset date, but she was terminated after two weeks.  [*Id.* at 51-52.] Ms. Anderson stated that she continued to look for work but was unsuccessful.  [*Id.* at 63-64.] Prior to her employment at Payless Liquors and the Westin, Ms. Anderson served as a bakery manager, a waitress, an assembler of plastic products, and a gas station cashier.  [*Id.* at 48-51.]

Ms. Anderson testified that she can sit for 10-15 minutes at a time, stand for 10-15 minutes at a time, and walk for 15 minutes at a time "[d]epending on the day."  [*Id.* at 53.] According to Ms. Anderson, her doctor advised her not to lift anything.  [*Id.*]  Ms. Anderson further testified that she cannot bend from the waist, has numbness in her thumb, and bursitis in her left shoulder, which causes severe pain.  [*Id.* at 53-54.]  Ms. Anderson testified to having constant pain in her lower back, which is exacerbated by bending, walking, sitting, and standing. [*Id.* at 54-55.]  Ms. Anderson takes Vicodin every four to six hours to help alleviate her pain, but says the pain is still constant.  [*Id.* at 55-56.]  Ms. Anderson testified that she lives alone and eats, cooks, cleans, bathes, and uses the restroom without assistance.  [*Id.* at 56-57.].  Ms. Anderson interacts with friends or family every day.  [*Id.* at 57.]  She testified that she suffers from bipolar disorder, a sleep disorder, stress, anxiety, and depression.  [*Id.* at 59.]

On September 15, 2010, the ALJ issued a decision finding Ms. Anderson not to be disabled.  [Dkt. 13-2 at 29.]  The SSA Appeals Council declined to review the ALJ's decision in March 2012, thereby rendering it the final decision of the Commissioner.  [*Id.* at 2.]  Ms. Anderson filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's determination.  [Dkt. 1.]

**II.**
**STANDARD OF REVIEW**

The Social Security Act provides that:

> "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."

42 U.S.C. § 423(d).

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively

3

disabling impairment,…can [she] perform h[er] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).  After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments.  The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e).

### III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the SSA, the ALJ ultimately concluded that Ms. Anderson was not disabled.  [Dkt. 13-2 at 29-30.]

At step one of the sequential evaluation, the ALJ determined that although Ms. Anderson worked after her alleged disability onset date, that work did not establish that she had engaged substantial gainful activity[1] since her alleged disability onset date.  [*Id.* at 18.]

At step two, the ALJ found that Ms. Anderson has the following severe impairments[2]: degenerative disc disease, status post thyroid cancer, hypothyroidism, diabetes mellitus, obesity, left shoulder pain, bipolar disorder, anxiety, and post-traumatic stress disorder.  [*Id.* at 19.]

---

[1]  Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a)-(b).

[2] An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

4

At step three, the ALJ considered various listings, but found that Ms. Anderson's impairments did not meet or medically equal those listings. [*Id.* at 19-21.] Ms. Anderson does not challenge the ALJ's determination that she did not meet or medically equal a listing.

After step three but before step four, the ALJ found that Ms. Anderson had the RFC to perform light work with the following exceptions:

> The claimant must be able to sit and stand at will. She can occasionally climb ramps and stairs, balance, and stoop. The claimant can never climb ladders ropes and scaffolds. She can never crouch, kneel, crawl, twist or bend below her waist. Further, the claimant's work must [consist] of simple, routine, and repetitive tasks in a work environment with no fast paced production requirements. Her work must have few, if any, changes and only simple work-related decisions. Lastly, the claimant may only have occasiona[l] contact with the general public and with her co-workers.

[*Id.* at 21.]

At step four, the ALJ found that Ms. Anderson is not able to perform any past relevant work. [*Id.* at 27.]

At step five, and considering Ms. Anderson's age, education, work experience, and RFC, the ALJ concluded that there are job that exist in significant numbers in the economy that she can perform. [*Id.* at 28.] The ALJ relied on the testimony of the vocational expert, Robert Barber, to conclude that even with her functional limitations, Ms. Anderson is able to perform the requirements of an apparel sorter or an odd piece checker. [*Id.* at 29.] Based on these findings, the ALJ concluded that Ms. Carter is not disabled. [*Id.* at 29-30.]

## IV.
### DISCUSSION

Ms. Anderson argues that the ALJ erred because he relied on allegedly flawed testimony by the vocational expert that did not reflect Ms. Anderson's RFC. [Dkt. 17 at 6-9.] Ms.

Anderson hinges her argument on the difference in the phrasing between the ALJ's stated RFC and the hypothetical she posited to the VE:

| Ms. Anderson's RFC | Hypothetical Question To VE |
|---|---|
| "The claimant must be able to *sit and stand at will*."  [Dkt. 13-2 at 21 (emphasis added).] | The hypothetical person "would . . . need a sit/stand option that would allow them to sit or—sit or stand *alternatively* at will . . . ." [Dkt. 13-2 at 66 (emphasis added).] |

Ms. Anderson contends that through the RFC, the ALJ ruled that Ms. Anderson "must be able to sit and stand at will."[3]   [*Id.* at 7.]   Ms. Anderson focuses on the inclusion of the word "alternatively" in the hypothetical and argues that it "did not allow for a worker to change at will from the walking position to either the sitting position or the standing position."  [*Id.*]  Ms. Anderson argues that this was error because the allegedly erroneous question produced flawed evidence on which the ALJ relied.  [*Id.*]

Ms. Anderson attempts to illustrate her point by emphasizing that neither occupation identified by the VE permits employees to sit at will while walking.  [*See* dkt. 17 at 8.]  With respect to the apparel sorter job, Ms. Anderson argues that "[w]hen walking through a retail clothing store returning items to display racks, an apparel sorter cannot sit down whenever he or she wants. . . ."  [*Id.*]  With regard to the odd piece checker job, Ms. Anderson emphasizes that an individual in that job cannot sit down when walking from the stockroom to production to

---

[3] As an alternative to her argument that the ALJ's hypothetical question was flawed, Ms. Anderson cursorily argues that "the court should order the ALJ on remand to render a reviewable residual functional capacity assessment."  [Dkt. 17 at 9.]  Ms. Anderson does not develop this argument and, considering the Court ultimately determines that the ALJ's questions to the VE did not constitute reversible error, the Court will not address Ms. Anderson's skeletal argument regarding the RFC further.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").

distribute parts.  [*Id.*]  In other words, "the job of *distributing* parts to production workers *cannot be performed standing or sitting*."  [*Id.* (original emphases).]

The Commissioner argues that Ms. Anderson is "clearly splitting hairs . . . ."  [Dkt. 20 at 4.]  The Commissioner emphasizes that Ms. Anderson doesn't cite any precedent distinguishing between a "sit and stand 'alternatively' at will option," that it was unable to find any, and that the VE would have understood the commonly used terminology at issue.  [*Id.*]

It is well-established that when an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.  *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).  Specifically, "ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity . . . ."  *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011).  The applicable precedent, "taken together, suggest[s] that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).  There is not, however, a *per se* requirement of specific terminology.  *Id.*; *see also see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("An exception therefore exists for cases in which the vocational expert independently learned of the limitations (through other questioning at the hearing. . .) and presumably accounted for them.").

The Court agrees with the Commissioner that Ms. Anderson has not stated a basis for reversing the ALJ's decision.  It is telling that Ms. Anderson does not claim to require a wheelchair, yet her argument suggests that any job she could hold must require her to be able sit and stand at any time, including from a walking position.  This argument contradicts her testimony at the hearing, which the VE heard, that she can sit for 10-15 minutes at a time, stand for 10-15 minutes at a time, and walk for 15 minutes at a time "[d]epending on the day."  [Dkt.

13-2 at 53.]   Further, as the Commissioner properly points out, workers cannot transition instantly from walking to sitting.   That transition inherently involves and intermediate step of standing.   Because Ms. Anderson does not cite any authority criticizing the distinction between the language in her RFC and the language in the hypothetical proposed to the VE, and the Court does not find the question to the VE to be inherently confusing or erroneous, the Court rejects Ms. Anderson's argument and affirms the decision of the ALJ.[4]

## V.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent.   "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."   *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010).   Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.   *Id.*   Taken together, the Court finds that Ms. Anderson has not raised any legal basis to overturn the Commissioner's decision.   Therefore, the decision below is **AFFIRMED**.   Final judgment will be entered accordingly.

---

[4] The Commissioner relies on *Zblewski v. Astrue*, 302 Fed. Appx. 488, 494 (7th Cir. 2008), to argue that the ALJ was entitled to rely on the VE's testimony since Ms. Anderson didn't challenge it at the hearing.   [Dkt. 20 at 5-6.]   But *Zblewski* dealt with an apparent inconsistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT").   302 Fed. Appx. At 394 (addressing Social Security Ruling 00-4p, "which requires the ALJ to identify and explain any conflict between the DOT and VE testimony").   The Court declines to extend *Zblewski* to the situation at issue here, given that the ALJ is responsible for presenting VEs "with a complete picture of a claimant's residual functional capacity . . . ."   *Jelinek*, 662 F.3d at 813. Additionally, although the Commissioner notes that the VE identified multiple unskilled, sedentary jobs existing in Indiana that Ms. Anderson could do, [dkt. 20 at 6 (citing dkt. 13-2 at 71-72)], as Ms. Anderson notes on reply, the ALJ did not adopt that testimony in her opinion, [dkt. 21 at 1-3].   Therefore, the Court has not relied on it to affirm the underlying decision.

02/11/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

J. Frank Hanley II
lauras@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov